STEVEN G. KALAR
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    415.436.7700
Facsimile:    415.436.7706
Jodi_Linker@fd.org

Counsel for Defendant TREJO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RISTIR TREJO,<br><br>Defendant. | Case No. CR 19-0535 RS<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date:   March 17, 2020<br>Time:   2:30 p.m.<br>Court:  Hon. Richard Seeborg |
|---|---|

*US v. Trejo*, Case No. 19-0535 RS;
Def.'s Sent. Memo.                     1

## INTRODUCTION

A sentence of time-served is reasonable and appropriate given Ristir Trejo's personal circumstances and offense conduct. Mr. Trejo left a dangerous gang-ridden country having personally suffered abject poverty. He came in the hope of making money to send back to his family. Unfortunately, however, he became addicted to controlled substances and started selling small quantities of drugs to feed his habit (and also send money back home). He has only one adult conviction—a *misdemeanor* conviction for illegal entry for which he received 79 days custody. This is his first and only felony conviction, and already the longest he has ever been in custody.  In consideration of all of the factors under 18 U.S.C. § 3553(a), he requests that the Court sentence him to time-served, which is over six and a half months.

## DISCUSSION

The Presentence Report concludes that Mr. Trejo's final adjusted offense level is 15 and criminal history category is II, resulting in a range of 21-27 months under the advisory guidelines.[1]

A variance is warranted in this case. While no one's background can be used as an excuse for the commission of a crime, it is important for the Court to consider Mr. Trejo's life circumstances leading to his arrest. As is reflected in the PSR, Mr. Trejo's life has been marred by poverty. Mr. Trejo was basically homeless his entire life. His father left when he was just a toddler, and his mother would move Mr. Trejo and his siblings from temporary abandoned homes to other temporary abandoned homes. As the oldest child, at the age of nine, he was forced to leave school so that he could begin working to make money for his mother and siblings. He then would often sleep outside or in shacks near the fields where he was working. When he was 13 years old, he went in search of his father to ask for financial assistance. He found his father, only to have him refuse to assist in any way and further deny and shun his family. He has had no contact with his father since.

---

[1] There is one error in the Presentence Report. It states in paragraph 8 that the guideline calculation is based on the "net weights" of the drugs seized on all four dates. That is not correct. Several of the weights are gross weights, others are estimates of net weights. All of the drugs in the case were not weighed, and some of the government's estimates of net weights came out higher than the gross weights, in which case the parties simply used the gross weight. Regardless, Mr. Trejo has agreed in his plea agreement that the based offense level is 18, a total adjusted offense level is 15 with the reduction for acceptance of responsibility.

*US v. Trejo*, Case No. 19-0535 RS;
Def.'s Sent. Memo.                            2

Fortunately, he maintains a tight and positive relationship with his mother. She, however, suffers from significant health issues, and has suffered several strokes. When he was approximately 13 years old, he made the journey north on his own to try to secure better opportunities. Mr. Trejo has remained in the U.S. in large part to make money to send back to his mother for her care. He understands that he will be deported and cannot return to the U.S. and looks forward to returning to Honduras so that he can care for his mother in person. He knows that it is better to be there with his mother providing her care than returning to the U.S. where he will again be incarcerated and unable to assist in any way whatsoever. While he will only be able to earn approximately $4 per day working in Honduras, he understands that is much better than the $0 per day he makes while in custody.

While living in the U.S., Mr. Trejo developed an addiction to several controlled substances. He started using marijuana daily at the age of 15, and was an alcoholic by the age of 25. In his early 30s, he turned to both crack and powder cocaine. To feed his drug habit, he sold small quantities of drugs. This also allowed him to send money back to his family at a scale that made a true difference to his family in Honduras. That, he now fully understands, comes at an even steeper price: his freedom. He understands that what he did was wrong, feels horrible about what he has done, and looks forward to returning to his family in Honduras.

While selling drugs is undoubtedly wrong, Mr. Trejo is quite literally the lowest person in the operation. Nonetheless, with only one prior misdemeanor on his record, he has a federal felony conviction, has served over six and a half months in custody and will be deported from the United States to return to earning $4 per day in Honduras. The consequences he has and will face are enough. The seriousness of the offense does not warrant any additional time in custody.

A careful look at the guidelines also reveals that the range of 21 – 27 months over-represents the seriousness of Mr. Trejo's criminal history as well as his offense conduct. As to the criminal history, Mr. Trejo is in Criminal History Category II by virtue of one prior *misdemeanor* conviction for which he received credit for time served. Because he had been in custody for 79 days at that point, he receives two points for that conviction, regardless of the fact that it was a misdemeanor and regardless of the fact that it was just because it took that long to get him through the court system that it came out just over 60

days. Whether the Court considers this overrepresentation of the seriousness of his criminal history as a departure or a variance, his minimal criminal history warrants a below guideline sentence in this case.

As to the offense level, there are several issues that artificially and unfairly elevate Mr. Trejo's offense level. First, although he pleaded guilty to only one of the eight counts charged against him, under the guidelines, the quantity of drugs from all eight counts is aggregated because of relevant conduct to establish the adjusted offense level here. Thus, the drug quantity is the combination of eight counts on four different dates over a 15 months period (May 18, 2018 – August 20, 2019). Looking only at the count of conviction (count 7), the possession with intent to sell 9.3 grams (gross, not net) of fentanyl on March 28, 2019, the base offense level would be 16 (between 8 and 16 grams of fentanyl) resulting in an offense level of 13 with the reduction for acceptance of responsibility, and a range of 15-21 months at Criminal History Category II or 12-18 months at Criminal History Category I. These ranges, however, are not based on actual net weights reported by a lab, but are instead the weights done by the officers and include the packaging; therefore the range would likely be even lower if the packaging were not counted.

Moreover, as noted in the PSR, the total adjusted offense level is based on the aggregate of three different drugs found on four separate dates over a 15 month period. Accordingly, the offense level does not reflect the amount of drugs who had on any one occasion, but the total amount over a 15 month period. Also, the offense level is arbitrarily inflated by the disparate treatment of crack versus powder cocaine. The crack cocaine found on those dates totals 3.2 grams with a "converted drug weight" (CDW) of 11.43 kg because the guidelines provide that each gram of crack cocaine is equivalent to 3,571 grams of CDW. PSR ¶ 13. By contrast, powder cocaine is converted at a rate of 1 gram to only 200 grams of CDW, and therefore 3.2 grams of powder cocaine would only yield 640 grams of CDW, significantly lower than the 11.42 *kilo*grams it currently yields. *See* U.S.S.G. § 2D1.1 (app. n. 8(D)) (providing that one gram of powder cocaine equals 200 grams of CDW while one gram of crack cocaine equals 3571 grams of CDW). The Supreme Court has long recognized that a policy disagreement with the disparate treatment of crack and powder cocaine by the U.S. Sentencing Guidelines can serve as the basis for a downward variance under the factors of 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 110 (2007).

Mr. Trejo also would have been eligible for a two-level safety valve reduction under U.S.S.G. § 2D1.1(b)(18) had he not been in total fear of the significant risks to himself and his family had he completed a safety valve proffer.

Additionally, any sentence imposed by the Court will be harsher for Mr. Trejo than for a defendant who is a citizen. First, because of his immigration status, Mr. Trejo will not be eligible for a camp or other low-security level facility. Second, because of his status, he will not be eligible to serve a portion of his sentence in the halfway house. For citizen defendants, on the other hand, up to one year of the sentence can be completed at the halfway house. Third, even if this Court were to send him to a longer period of incarceration, his status would make him ineligible for the Residential Drug Abuse Program (RDAP) and many of the other helpful programs available in the prisons. Fourth, Mr. Trejo will certainly be deported from the country. While that is a definite consequence of his conviction, it will also lead to added deterrence as Mr. Trejo will no longer be anywhere near the Tenderloin to use or sell drugs.

Additional time in custody also will not provide any further deterrence. As the Court is no doubt well aware, the available data does not support the conclusion that longer sentences promote general deterrence; rather, it is the certainty of an arrest and detention, which has already happened in this case.

Notably, Mr. Trejo moved this case as quickly as possible. He did not file any motions or attempt to delay. Instead, he sought to get to sentencing as quickly as possible and pleaded guilty at his second appearance before this Court. Despite his efforts to move things as quickly as possible, because he was originally charged in the state and then transferred to federal custody, he has already served a significant period in custody (six and a half months) on the instant offense conduct.

Finally, Mr. Trejo will be placed on supervision for three years after he is released from custody. Of course, this supervision is meaningless as long as Mr. Trejo remains out of the country after his certain removal from the United States. However, the government seems largely concerned with Mr. Trejo returning to the country unlawfully after his deportation. As the three year term of supervised release would heighten his potential sentence should he return to the United States, as well as lower the government's burden to prove any such violation, that is an additional consequence that should be considered by the Court.

*US v. Trejo*, Case No. 19-0535 RS;
Def.'s Sent. Memo.                    5

## **CONCLUSION**

Mr. Trejo stands before the Court with his first felony conviction and certain deportation for being a drug addict and low-level drug dealer. A sentence of time-served is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Dated: March 10, 2020                                    Respectfully submitted,

                                                                                         /S_____
                                                                                         JODI LINKER
                                                                                         Assistant Federal Public Defender